TEXAS LIFE INS. CO. v. MUELLER et al.

No. 4507.

Court of Civil Appeals of Texas. Amarillo.

May 18, 1936.

Rehearing Denied Sept. 7, 1936.

Kyle Vick, of Waco, for appellant.

Edgar L. Robertson, of Childress, and V. H. McClintock, of Paducah, for appellees.

JACKSON, Justice.

Ethel C. Mueller, the appellee, joined by her husband, C. R. Mueller, instituted this suit in the district court of Motley county against the appellant, Texas Life Insurance Company, on an insurance policy issued by it to Jet O. Lewis.

She alleged that on September 10, 1927, she was the wife of Jet O. Lewis, the insured, and the appellant issued to him policy No. 49258, by the terms of which it agreed to pay appellee, the beneficiary therein, the sum of $3,000 on the death of the insured, or the sum of $6,000, if he came to his death by accidental means; that the insured was killed in an automobile accident on November 11, 1932, while the policy was in full force, and the appellant thereby became bound to pay her, under the double indemnity clause, the sum of $6,000, with interest and attorney's fees.

The appellant answered by general demurrer, admitted the issuance of the policy, and alleged that the policy according to the terms and provisions thereof, which it pleaded, had lapsed and terminated prior to the death of the insured.

The case was tried before the court without the aid of a jury, and judgment rendered for appellee in the sum of $5,653.89, the principal amount due under the policy after deducting certain indebtedness and the current annual premium for the sixth policy year beginning September 10, 1932. The total judgment, including principal, interest, and attorney's fees, amounted to $8,126.68.

Insured lost his life in an automobile accident on November 11, 1932, and it seems to be conceded that if the policy was in force on said date the beneficiary is entitled to recover under the double indemnity clause.

The provisions of the policy essential to a disposition of this appeal are as follows:

"Premiums are payable annual but may be paid in semi-annual or quarterly instalments in accordance with the rates in use by the Company at the date hereof, and changed from one to another of such modes of payment upon the insured's written request therefor on the Company's form; if the insured should not survive to complete premium payments for the current policy year the amount necessary for such completion will be deducted from the amount payable at death.

"All premiums are payable in advance at the Home Office of the Company in Waco, Texas, or to an authorized agent of the Company upon delivery of a receipt signed by the President or Secretary and countersigned by the authorized agent. If any premium is not paid on the date when due this policy shall be null and void except as hereinafter provided. * * * A grace period of one month is allowed for the payment of any premium after the first, but if death occurred during the period of grace the unpaid premium shall be deducted from the amount payable.

"At any time after the second policy year and while this policy is in full force, the insured can borrow from the company on the sole security of this policy, properly assigned to and endorsed by the company, any sum within the loan value speci-

fied in the table below, from which loan value any indebtedness on the policy and any unpaid premiums for the current policy year will first be deducted. The Company shall furnish the form¹ for the assignment required hereunder and upon completion of the loan will return the policy to the insured. Interest, at the rate of six per cent per annum, will be collected out of the amount of the loan to the end of the current policy year and is thereafter payable in advance. Failure to pay any such loan, or to pay interest thereon, shall not avoid this policy unless the total indebtedness thereon to the Company shall equal or exceed its loan value.

"If at any time after the expiration of the second policy year, if all premiums have then been duly paid, any premium or instalment thereof is not paid within the time allowed for its payment to the Company, unless otherwise instructed by the insured in writing, will forthwith advance the amount of such premium, or instalment thereof, with interest thereon at the rate of six per cent per annum, payable in advance out of the loan value then available under the policy, provided the total indebtedness to the Company on account of this policy, if any, at the time and any interest that might be due thereon, together with such advance shall not exceed the total loan value then available. While the policy is thus continued in force the insured shall retain all rights and privileges granted by its terms as if the amounts so advanced were paid by the insured in cash and may resume payment of premiums at any time without compliance with the conditions pertaining to reinstatement. The insured may, at any time, repay such advance or any other indebtedness on the policy, but failure to do so shall not avoid the policy until the total indebtedness thereon shall equal or exceed the loan value, in which case this policy shall automatically cease and determine. * * *

The insured did not pay the premium for the fifth policy year on its due date, September 10, 1931, but on September 21st thereafter he borrowed from appellant $249, out of which he paid the premium for said year since the appellant deducted from said loan the premium for said year, together with interest thereon in advance to the next anniversary date of said policy, September 10, 1932, which was the expiration of the fifth policy year. He executed for said loan his assignment and note.

On September 10, 1932, the insured failed to pay the premium for the sixth policy year, but executed a note therefor, payable on the 10th day of November, 1932, which, among other things, stipulated: "That although the annual premium due on the 10th day of Sept. 1932 on policy No. 49258 has not been paid, the insurance thereunder shall be continued in force until midnight of the due date of this note; that if this note is paid on or before the date it becomes due, and there is no other indebtedness on account of the premium, such payment will then be accepted by the company as payment of said premium, and all rights under said policy shall thereupon be the same as if said premium had been paid when due; that if this note is not paid on or before the day it becomes due, said policy shall be deemed to have ceased and determined on the date when said premium was due and all rights to extended or paid-up insurance shall be for the terms and amount secured by said policy on and from the day when said premium became due."

Neither this note nor the premium or any installment thereon for the sixth policy year were ever paid; hence, the right of the insured for extended insurance depended on whether, at the beginning of the sixth policy year, there was any loan value which, if applied to the payment of said premium or any installment thereof, would have continued the insurance be-

"Table of Loan and Non-forfeiture Value.

| After Expiration of Policy Year the | Loan Value | Paid-up Term Insurance | | Paid-up Life Policy | Cash Value |
|---|---|---|---|---|---|
| | | Years | Months | | |
| 1st | $ 0 | 0 | 1 | $ 0 | $ 0 |
| 2nd | 120 | 0 | 2 | 0 | 0 |
| 3rd | 183 | 4 | 4 | 321 | 120 |
| 4th | 249 | 6 | 9 | 480 | 183 |
| 5th | 315 | 9 | 2 | 639 | 249 |
| 6th | 387 | 11 | 7 | 801 | 315." |

yond the date of the death of insured on November 11, 1932.

The appellant's contention is that the record shows conclusively there was no loan value available on September 10, 1932, after deducting therefrom the existing indebtedness on the policy, and the insured having failed to pay the extension note when due, the policy lapsed and all rights of the beneficiary thereunder had ended at the date of the death of the insured.

In our original opinion we affirmed the judgment of the trial court. Since that time, in Texas Life Insurance Company v. Cork, 89 S.W.(2d) 779, 780, the Supreme Court has decided this question in favor of appellant. Under the law announced in that opinion the policy involved had no loan value in excess of the indebtedness against it on September 10, 1932, because the premium for the sixth policy year, and no installment thereon, was ever paid.

In the Cork Case, supra, a note was given for the premium of the third policy year, but was never paid, and the court said: "As the note was not paid on or before its due date, the 'Automatic Premium-Loan, Non-Forfeiture' clause did not become effective. It will be noted that this clause provided that if at any time after the expiration of the second policy year, provided all premiums have been duly paid, and any premium is not paid within the time allowed therefor, the company will forthwith advance the amount of such premium with interest thereon at the rate of 6 per cent. per annum, payable in advance out of the loan value then available under the policy. Upon expiration of the second policy year the premium for the third year became due, being payable in advance. The third year premium was therefore necessarily included with those required to be paid as a prerequisite to make available any loan value the policy might have. * * * In fact, it appears that the policy at such time had no available loan value, the third premium which was then due not having been paid. The policy therefore lapsed as of date November 17, 1929, for nonpayment of the premium note."

Under the law as announced in said decision, in order for the policy to have had an available loan value in excess of the indebtedness against it, which was $249 and interest thereon payable in advance at the rate of 6 per cent. per annum, it was essential that the premium for the sixth policy year be paid.

The motion for rehearing is granted, the original opinion is withdrawn, the judgment is reversed, and the cause remanded.

On Motion for Rehearing.

On a former day of this term, we reversed the judgment and remanded the cause to the trial court for the reason we were of the opinion that the issues of waiver and estoppel pleaded by appellees against appellant had not been determined. On a second motion for rehearing, our attention is called to the fact that the case was fully developed, and we find that the court determined the pleas of waiver and estoppel against appellees; hence, appellant's motion requesting that the judgment be rendered is granted, and the judgment heretofore entered set aside, and judgment here rendered in behalf of appellant.